Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.    Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. All right. The United States Court of Appeals for the Federal Circuit is now open in session. God save the United States and His Honorable Court. Be seated, please. We have four argued cases this morning. The first of these is number 15-5152, Sios Corporation v. United States, Mr. Duvall. May it please the court, this case presents a relatively simple question. Before you begin, let me just mention that the confidentiality markings in your brief are excessive and seem to be unjustified. I understand. We can talk later about what to do about that, but page after page is markings. Go ahead. Yes, Your Honor. This case presents a relatively simple question of whether this must defer to an agency's award decision, even though that award compels violation of procurement law and policy. Despite the government's assertions, the issue is neither trivial nor waived. The agency's failure to weigh the technical factors in accordance with applicable law, combined with its failure to complete the evaluation in a manner contemplated by the source selection evaluation plan, constitutes systematic flaws in the evaluation of Sios' proposal. How do we know the agency didn't complete the evaluations in a manner contemplated by the source selection plan? The source selection evaluation plan contemplated an evaluation team reaching a consensus. This team approach, the only document that we have to show what the evaluation team did was the spreadsheet index, which shows a dominating influence. But that doesn't mean, the fact that that's the only document doesn't mean that they didn't do the team approach. I'm only bound to the administrative record, so I don't know what goes beyond that. But what I do know is that seemingly one person dominated the overall. But that's not what they said. I mean, the lower court found and the agency said we did this the way we were supposed to do that. That flows into the contracting officer's exercise of judgment, where information that calls into question whether or not the source selection evaluation plan was followed, might raise a flag as to whether or not the ultimate decision was. I don't understand what information calls into question whether the source selection plan was followed or not. All you point to is a spreadsheet. But the court and the agency said that spreadsheet is not indicative of the full evaluation. It's my understanding under the Jamco decision that the contracting officer is allowed to rely on reports and information from those below him. But where there's information that calls that into question, that could impugn his independent judgment. And the only thing in the record that we have, which I'm only bound to what's in the record, the show that evinces this team approach isn't there. All we have is a master spreadsheet. And I agree with the lower court that it was a series of unsigned documents. But to get from A to B to C, the only thing in the record that can show whether this was adhered was the spreadsheet. And it shows an overwhelming influence by one person. And so from our perspective, while we... Not that I'm aware of, Your Honor. Essentially, what goes on beyond the scope of the administrative record... What's the record supposed to show? I mean, if you had been the primary official on the contract, what would you have done to decorate the record in a manner that would now satisfy you? Well, among other things, putting aside our argument with respect to 2305, I would have liked to see some evidence that the plan set forth by the source selection evaluation plan was adhered to. Did you go into that? Did you depose the chair of the SSEB and determine whether they followed the proper procedures? To my knowledge, there were no depositions at the court below. So isn't it your burden to establish that they didn't follow proper procedures? Ultimately, it is the protester's burden to show competitive prejudice. But the government... I mean, you're complaining that you don't have the individual evaluations from all these people on the committee, right? That's part of the argument. Well, if you wanted to see them, you needed to ask to see them and to supplement the record. And you didn't do that, did you? No, Your Honor. Well, how do we know whether there's error or not? I mean, the Court of Federal Claims found there wasn't error. The agency doesn't seem to think there was error. If you didn't ask for those evaluations, which may or may not be out there, then what can we review? Well, ultimately, I think the chief concern we have is the failure to adhere to 2305, where these nine factors or sub-factors that we've shown were not weighted equally. Now, what that means to me is that no matter how... That's a different argument, right? That's a completely different argument. That is the main argument we're making. The independent judgment argument and the abandonment of the source selection evaluation plan evinces that... As I understand from U.S. Falcon and the Fort Carson case, that a departure from the source selection evaluation plan, considering it's a relevant court document required by the Court of Federal Claims, could show an arbitrary act. And while the courts are allowed to review the ultimate rationality of the decision-maker, they're also allowed to view, as Fort Carson says, the lineage of what goes before the ultimate decision-maker, which here would be the contracting officer. What about your argument about these items that the government says are criteria, you say are sub-factors, you rely on a FAR provision saying that unless they say otherwise, the sub-factors have to be weighted equally? So... Why are these sub-factors as opposed to criteria? Well, first, Your Honor, the National Spreadsheet Index shows on Appendix 174 that they have been called determining factors. The reason it's important in terms of federal contractors is that the only information contractors get on how to respond to what the government's looking for goods and services is the solicitation. Now, when we have sub-factors and factors, they're supposed to be clearly noted whether or not one is more important than the other. It allows government contractors to properly respond with their proposal to the government. So if one sub-factor is domineering, but we think it should be equally weighted, then our whole—unlevels the playing field. Now, this comes from Izzertrack's claims court decision. The first level of argument on this particular issue is the government's argument that you didn't raise this issue below. And this particular issue doesn't—isn't ventilated in either the original opinion or the reconsideration opinion by the Court of Federal Claims. And the problem we have is that most of the documents you filed in the Court of Federal Claims are filed under seal. So when the government comes into this court and says, I'm sorry, you didn't raise that argument below, your response is, well, we sort of thought we did in a general way. But you don't cite to any particular document. So can you cite us to a document that's filed under seal downstairs? We can go down and get it, in which we will see you having explicated this argument. The—in our—in the motion for judgment on the administrative record on 21, the argument was made that the technical evaluation was flawed. I understand the government's argument that ordinarily appellate courts won't consider issues not passed on—not properly raised. But that same court, Hormel v. Halbring, also articulated that there may be issues where questions of law are presented. And my— What you're saying is you don't have—you didn't squarely present this particular argument to the Court of Federal Claims. It was very— So that there would have been ventilated down below the difference between a criteria on the one hand and a subfactor on the other. I—you're correct, Your Honor. The argument was a little bit more broad below. But I think the cases that the government relies to demonstrate waiver, I think given the nuance of this case to the extent that this 2305 criteria is part of the competitive prejudice, and what we're showing is the court made clear error— How was the government or the Court of Federal Claims to know that you were even going to make this argument? I mean, this seems like an entirely separate argument than the argument you made about the various aspects of the evaluations. You went to the merits of each technical thing and said this is wrong and this is not wrong. And the Court of Federal Claims agreed with you on some and didn't. Now you're making a completely different legal argument that it should have been weighed entirely differently. But we don't—that wasn't in the record. The government didn't respond. They could have supplemented the record if there was any question about what happened there. How is it—how is it possible for us to review that as a matter of pure law when it's based upon what actually happened here and it was never raised below? Well, given the—what I understand to be the exceptions to this waiver rule under LEA Dynatech, I think that the pure question of law exception applies, as well as Exception 4, which is the significant question of general impact as we're dealing with the federal procurement. We are dealing with a complete record, so I also think interactive comes into play. But more importantly, Your Honors, the— How can you say we're dealing with a complete record when we don't—I mean, this issue wasn't ventilated at all. There may have been some supplementation necessary to address it. I mean, we've already determined it's not a complete record with regard to your other argument because you didn't—the government didn't put the individual technical evaluations in and you didn't ask for them. I think ultimately, because I have the yellow light here, Your Honor, the court's error in its prejudice analysis is still predicated on— what the lower court did was just simply tally strengths and weaknesses without framing them into this equal subfactor. At the time of the award, the contracting officer is left with a grossly inflated awardee to the detriment of status. Now, had this been followed, as we have shown, we both are on par with the highest technical score. We both have the equal past performance rating. And then it's a tradeoff. Sios is the incumbent. And it would have been a decision for the contracting officer to make whether or not the 23 percent increase in price was worth the— going to a different contractor, which, as we said, as Sios was incumbent, it could have been within the contractor's discretion—contracting officer's discretion to keep the award. As the issue with 2305 necessarily implicates the court's error, I think one of these exceptions should allow it to also be ventilated enough for the court to hear it as it relates to what the agency did. You want to save your rebuttal time? Yes, sir. Thank you, Your Honor. Thank you, Mr. Duval. Ms. Sanchez? Good morning. May it please the Court? Contrary to Sios's contention, the government not only complied fully with the terms of the solicitation, but it also complied in this case with the parameters set forth in the source selection— The evidence in the record shows that the technical evaluation team followed the source selection plan. I mean, you didn't put in individual evaluations. I don't know if that's because there are no written ones or you just didn't do it, but— We filed a—not all of the offerors in this case—the documents for all of the offerors were included in the record, based on an understanding with the court. But for the ones that we did include in the record that the court has in the administrative record below, there are notes that the individual evaluators generated. The source selection plan in this case required the source selection evaluation board to take the feedback and the evaluation details provided by each of the two individual evaluators for the technical factor and to generate a consensus evaluation document, which she was required to sign. There is nothing in the source selection plan or the solicitation itself that requires each and every individual evaluator to generate its own written evaluation that then would go up to the source selection authority. So generally—well, not generally. The law is that the agency is bound to review proposals by the term of the solicitation itself, not by the terms of the source selection plan. In this case, however, they filed—the agency followed the source selection plan in its entirety. And I think that SIAS's position is simply based on a misunderstanding and misreading of the solicitation and the record. The spreadsheet that SIAS refers to, it's a working document, and as SIAS— But what's the evidence that the other members of the SSEB participated the way they were supposed to? We don't know on this record whether they did or not, right? They met, and there's in addition the record that they met. There are documents in the record. They met? They're allowed to meet by consensus, and that's what the source selection plan required, and there are also— What evidence that they met and discussed this? I believe it's noted in the individual notations by the individual evaluators. There were only three technical evaluators. It was a team of three. Ms. Farley was the— Did any of them testify? There was no testimony below. Or submit declarations. Submit declarations. No declarations. No declarations. There was no testimony below. This is purely a record review case, Your Honor. Are there notes from the other two about their evaluations? I believe that there were sheets on which they described their— They're not in the appendix in this case. We didn't rely on them for this, but there are— If I'm remembering the record correctly, there are notations that they made on their individual scoring sheets. But Ms. Farley, in this case, did exactly what the source selection plan directed her to do. And her work product, the consensus work product of all three evaluators, was submitted in written form to the source selection authority. So on that point, there was no error by the source selection authority in relying in the written consensus reports that were submitted by Ms. Farley. What about sub-factors and criteria? As the court pointed out, this was raised for the first time in this appeal. Yeah, we'll put that aside. What about the merits of it? It has no merit whatsoever. In this evaluation, in Section M of the solicitation, the agency set forth only three factors to be evaluated. None of the factors contained sub-factors. Every solicitation contains an explanation to offer. We only have one case here from a court as opposed to the agency, right? Isra Tex against the United States. I'm sorry? We're looking for some guidance in the case law here. Isn't Isra Tex the case we should be looking at? I don't— Are you aware of any other case that deals with the 2305 issue? I don't believe so, Your Honor. It's the only case that was cited in the brief, isn't that correct? There are not too many cases out that— Well, that's what I'm trying to get at. So we're looking for some guidance. If you look at Isra Tex, in Isra Tex there were three factors—product demonstration model, past performance, accelerated delivery. And then, according to the opinion, there were four sub-issues with regard to product demonstration models. They weren't described as sub-factors in the contract in that case. Correct. So they were nonetheless deemed to be sufficient to invoke the rule that they had to be treated equally in that case. Why should we treat these any differently? There were no ratings assigned to the— In order to be a—in a solicitation that includes sub-factors, whether they are labeled or not, the agency sets forth how the sub-factors themselves will be evaluated. And there is usually, in the solicitation, an explanation of either how much they were weighed or how a rating for each— How the sub-factors or how the factor itself? For the sub-factors. In order to— Which contract will say it that way? The solicitation that includes sub-factors. Here, all we have is an explanation— Have you given us an example of that in your brief? No, I didn't cite two— Well, why should I believe you? I suppose the court doesn't have to believe me on that. No, but I mean, you're supposed to come in— I have a court case here that lays out what were deemed to be sub-factors that seem to me to be laid out in the same way they're laid out in this contract. I cannot point the court to a specific case that explains the difference between a sub-factor and a— Well, let me put the question— And the criteria by which— Let me put the question to you this way, please, ma'am. Let's assume for purposes of argument that in this particular contract, items one through nine were sub-factors. Then we would expect to see in the record, in the evaluation— Well, let's assume that we decided, for purposes of this case, they are sub-factors. Then they were not properly assessed. Isn't that correct? That would be correct because there were— Because they weren't given equal weight. No, not because they weren't given equal weight. Because they were given no specific weight at all. Okay. In the sense, I mean, the criteria— Now, wouldn't the law require them to be given specific weight? Not to the explanation to the offerors on how a factor is going to be evaluated. All that— These nine elements that are listed under the technical risk evaluation approach is simply an explanation to the offerors on what the agency will look for in the one factor. It's not individual sub-factors. So if— What's the difference? The difference is that if they had weighed them differently at all, as Siles is suggesting, then there would be some indication in the actual consensus evaluation. We have no— You mean because they didn't do their job, we have to assume there was no job to be done? No, Your Honor. What I'm saying is that there is no indication in this record, in any of the evaluation documents, that a specific weight was given to the instructions that were provided to the offerors. In order for— When we have sub-factors, the— And so when you don't know, you don't know how much weight might have been given. Well, no, because what plaintiff is suggesting is— What Siles is suggesting is that the adjectival ratings that ultimately were assigned were a compilation of ratings, of other ratings, of other elements of these sub-factors that it proposes. And that is not how the evaluation was done. The law presumes that in a situation where there are sub-factors, the law presumes that unless the contract specifies the weight to be given, let's assume there are 10 sub-factors. Yes. The law presumes that unless the contract specifies how each of the sub-factors shall be weighted, they'll be weighted equally. Correct. Now, what's the purpose? Why does the law make that presumption? So that plaintiffs—so that offerors know how they will be evaluated and the relative weight and emphasis that they should put to— Isn't it to guard against the possibility that one of the sub-factors would be given dispositive weight? That also. 100% weight? That also. That also. No, that's the driving principle, is it not? Yes, Your Honor. So, let's assume there were sub-factors in this case. How do we know that the deciding official didn't take one of the sub-factors and assign it 100% weight? You wouldn't be able to tell from the documents because that's not how the evaluation approach was set forth in the solicitation or in the evaluation documents. If we're going to assume that they are sub-factors, that the instructions to the offerors on how to prepare their technical proposal are sub-factors, then obviously there would have to be, in this case, a finding that there was a flaw in the evaluation. But that's not what we have here. You said how to prepare their proposal? That's what you thought these nine factors were for? If we look at the actual evaluation, I mean, if we look at the factors, it says proposals will be evaluated to determine, and it has a list of the nine issues that the agency will look. I'm looking at pages 118 and 119 of the appendix. And they are just instructions on what areas the technical proposal should cover. We have these in just about every proposal, an explanation to offerors. So, I mean, to the extent that there were sub-factors, then... Maybe you should say in the solicitation that these aren't sub-factors within the meaning of 23.05 or whatever it is. Well, the agency, when they have sub-factors, they label them as sub-factors, and they provide an explanation on how each sub-factor will be weighed, or otherwise they say it will be weighed equally. I mean, basically, this is a back-door challenge to the terms of the solicitation. This protester went to the GAO, I believe, four times before. Is what you're saying, if the agency wants sub-factors, they'll list them as sub-factors, and either they'll be of equal weight or they'll tell us how to weight them. If they don't list them as sub-factors, they're not sub-factors. That is correct, Your Honor. That is correct. And this, SIOS filed a total of five protests in this case, inclusive of the one that was filed at the Court of Claims. They went to the GAO, I believe, three or four times. If they had a question about the terms of the solicitation and how the technical proposal was going to be evaluated, they had ample time to get guidance. There was even a question and answer period. Were there any questions about how these nine factors were going to be weighed by anybody prior to the award? No, Your Honor. I think your blue and gold argument is a very bad argument. I think it's extremely difficult to say that someone seeing the solicitation should have raised this particular question at that time based on the face of it. Well, SIOS didn't have any concerns about it. Even in its own proposal, it doesn't refer to anything as sub-factors. Well, maybe they just assumed that they were going to be weighted equally, which is what the regulation seems to suggest, if they're sub-factors. But there was no indication that in either the solicitation, the language in the solicitation, or in SIOS' own proposal. But there was none in the Esratax case either. The Esratax case did not identify items 1, 2, 3, and 4 as sub-factors. They simply said these characteristics for which the models will be tested or evaluated are 1, 2, 3, 4. Characteristic criteria indicia. Didn't say sub-factors. I am not familiar with the underlying record in that case, Your Honor. Well, you should be. So I haven't seen. Shouldn't you be? With the individual? Since it's the only relevant case. We're supposed to follow the law, and we find it in the decided case law. I would suggest to the court that in a situation like this, that this issue wasn't raised at all over the past four years that SIOS has been challenging this procurement in one way or the other. Which they're entitled to. The issue has been waived by SIOS repeatedly at every stage of its challenge to this solicitation. So to raise it for the first time in appeal is inconsistent with this court's precedents. With respect to the lower court's prejudice evaluation, prejudice analysis, the trial court did exactly what this court set forth in its banning opinion. And it conducted a review of the errors, the two de minimis errors that the court identified in the evaluation process. And it determined that SIOS did not demonstrate that it was within the active zone of consideration for its proposal, even after the two errors. And SIOS's request, or SIOS's position, that the court should have re-evaluated the proposals and issued new ratings to its proposal and the proposals of others completely contradicts this court's precedents on that issue. Okay, thank you. This contract has been performed, is that correct? The contract, the base year was fully performed and the one-year option was fully performed and the agency granted a six-month extension under the FAR that is currently being performed. What's at stake here? Preparation costs and that sort of thing, right? Just preparation costs, Your Honor, yes. Okay, thank you. Mr. Duvall, you've got a little less than three minutes. I think ultimately, Your Honor, is that because the lower court conducted its prejudice analysis, which was just a cursory tally of strengths and weaknesses, that analysis did not take into account the equal weighting scheme contemplated by Section 2305. Because of that, and because of what this court said in Banham, which is that a protester needs to show that there was a substantial chance that it would have received the award but for the errors in the contract. And in Banham, this court also said that that test is more lenient than actual causation, that we don't have to show that we would have won the contract. That we are in a position where, congruent with what this court said in Dana General, which is to prevent unwarranted interruptions, that shield was also not designed to then be turned into a sword to make it virtually impossible for protesters to overcome this burden against the government's record. As an attorney, I agree that the federal government and its agencies should have a degree of deference in their decision-making. That's important in federal contracting. It's important to have these processes in place so that contrasts can get made. However, when there's a violation of law and seemingly departures from the source selection... How do we know there's a violation of law? My problem with you on this subfactor argument is this wasn't raised until we got here. Until we have no idea whether the government thought they were subfactors, whether they could explain whether they were subfactors or not. And you didn't apparently think they were or didn't care about that issue below either. And so we have nothing in the record to demonstrate whether the contracting officer and the source selection board  Well, I agree, Your Honor. It was not argued below. In the Master Spreadsheet Index on Appendix 174, they're called determining subfactors. The determining factors, I'm sorry, and their list, one through nine. At least another offeror in its debriefing, questions for debriefing, refers to evaluation factors and subfactors. But in practice, in substance, in the technical evaluation on Appendix 148, you can see them with granularity and specificity on how each one was outlined. Given that we believe we've shown that we could have been on par and they already wasn't as high as they were. Can I just ask? I know you're about out of time. I don't know how I'm going to ask you this because you've got it labeled confidential. But in your brief, you go through and you chart your strengths and weaknesses and the winning, bitter strengths and weaknesses. It doesn't seem to me that you've even done that accurately. I'm going to see if I can ask you about this without talking about it too much. Can you look at page 27 of your brief? And cross-reference page 13 of your brief. Page 27? Yeah. Okay, I'm on page 27. So for SSB in that chart, you've got strengths, significant strengths, strengths and weaknesses. If you look at the things you've got listed there and you compare it back to page 12, it seems like you're missing something in the strengths column. There were... So as I understand it... You made up these charts, by the way, didn't you? These aren't in the source selection documents. No. So basically what I did, Your Honor, was apply the equal weighting so that even though there was a number of strengths on one of the awardees, sub-factor one, that still garners equal weight. So that sub-factor one couldn't be worth more than 11% of... Yeah, that's not what I'm asking about. I'm looking at the chart from page 13 and it looks like you've missed a strength altogether in one of those categories for SSB. Was that on the reply brief? No, it's on page 13 of your opening brief. There were factors that were evaluated as neutral and there were factors that were evaluated as strengths or weaknesses. And the difference between the chart on 13 versus the chart on 26, was on 26 is where I've shown that even though there was a compilation of multiple strengths for one sub-factor, I transferred that... Well, I'm just going to ask you about it. Sub-factor two for SSB. I mean, they're the awardee anyway, so I would think that this is in the record. Okay. It says it's a strength on page 13. Okay. In your chart, you don't list sub-factor two as a strength for them. Do you? Or am I just reading your chart wrong? 26. On 27. SSB. I may have made an error. You either made an error in the chart on 13 or on 27. Well, I mean, how are we to rely on any of this? The technical evaluation appendix, those charts were derived from appendix 148, where there were neutral ratings and then... But you used those charts to suggest that you and the winning bidder are technically equivalent. And if those charts aren't true, then how do we even know that? Why can't we presume the Court of Federal Claims lack of prejudice argument is right? When the evidence you're using to show prejudice is faulty. I think at the end of the day, the numerical tally based on appendix 148, we had strengths, significant strengths, weaknesses, and there was, I think, a few neutrals. When you compiled all the strengths for Category 1 and equate that against the others, that's where that chart was arrived. If I made a mistake before this court, it is sincerest apologies. I do not think that I made a mistake when I was compiling that chart. But at the end of the day, with this equal weighting, we think that Silas Stowe had a substantial chance of receiving the award. And ultimately, the lower court erred by not applying this scheme in the competitive prejudice analysis, which is why I think the nuance of this case allows the court to hear it, although even though at the court below it wasn't a central issue. Before you sit down, I want to come back to the confidentiality markings. If you look at page 13 again, you mark as confidential that the SSEP was assigned evaluation responsibilities. That's marked confidential. You said the evaluation board was responsible for evaluating each offer. That's marked confidential. What is the basis for these confidentiality markings? I chose to be a little bit more cautious. It's improper. You're not supposed to do that. I understand. This is not confidential material. Okay. I was confused because it's the source selection evaluation plan or... I apologize. I was being overcautious. All right. Thank you. Thank you, Mr. Duvall. Thank both counsel. The case is submitted.